IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OMAHA INTERLOCK, INC.,<br><br>  Plaintiff,<br><br>vs.<br><br>ALCOHOL DETECTION SYSTEMS TECHNOLOGY, LLC, ALCOHOL DETECTION SYSTEMS, LLC, and CONSUMER SAFETY TECHNOLOGY, LLC,<br><br>  Defendants. | **8:21CV8**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff Omaha Interlock Inc.'s ("Omaha Interlock") motion for preliminary injunction, Filing No. 21, and Defendant Alcohol Detection Systems Technology, LLC's ("ADSTech") motion dissolve or modify temporary restraining order, Filing No. 38.[1] This is an action for misrepresentation, breach of contract, breach of express and implied warranties, tortious interference, and violations of the Nebraska Franchise Practices Act, Neb. Rev. Stat. § 87-401 *et seq.* and the Junkin Act, Neb. Rev. Stat. § 59-805. The action was removed from state court on the basis of diversity of citizenship.

I.  BACKGROUND

  A.  Procedural history

As a preliminary matter, the Court notes that defendant Alcohol Detection Systems, LLC, ("ADS") has not been served nor has it appeared in this action. *See* Filing No. 55, Order to Show Cause; Filing No. 58; Filing No. 61, return of service unexecuted,

---

[1] Defendant ADSTech also requests oral argument, but the Court finds oral argument is not necessary.

1

Order returned as undeliverable. It appears from the record that ADS is no longer an actionable entity, its assets having been purchased by defendant ADSTech pursuant to an asset purchase and sale agreement dated July 8, 2020. Filing No. 24, Ex. C, Asset Purchase Agreement ("APA"). ADSTech's parent company is defendant Consumer Safety Technology ("CST") and CST is a guarantor of the agreement. *Id.* at § 8.16, Parent Guaranty; *see also* Filing Nos. 19 and 20, corporate disclosure statements ("The immediate parent company (member) is CST Buyer Company, a Delaware corporation, which is an indirect wholly-owned subsidiary of CST Holding Company, a Delaware corporation."). Also, the record shows that ADSTech does business as ADS. Filing No. 26-2, Ex. B, Declaration of Jeffrey Peck at 2. Accordingly, the Court finds defendant Alcohol Detection Systems, LLC should be dismissed as a party defendant in this action.

In its complaint, plaintiff Omaha Interlock alleges it entered into an exclusive arrangement with ADS to purchase breath alcohol ignition interlock devices "BAIID" manufactured by defendant ADS. Omaha Interlock would then lease the devices to customers in Nebraska. Omaha Interlock alleges that defendant CST, once a competitor of ADS, created an entity, defendant ADSTech, that later purchased ADS's assets for the purpose of driving Omaha Interlock out of business. Omaha Interlock alleges that defendant CST devised a scheme to drive Omaha Interlock out of business by changing the nature of the plaintiff's status from that of a franchisee or exclusive distributor of the defendants' devices to that of a service center. Omaha Interlock also alleges that defendants misrepresented that its devices complied with NHTSA standards, refused to replace noncompliant units, and threatened to directly lease devices to Omaha Interlock's customers.

On December 23, 2020, the Douglas County District Court found that the plaintiff had made a preliminary showing of irreparable harm sufficient to justify the entry of an order restraining defendants ADSTech and CST from certain allegedly tortious and anti-competitive conduct to maintain the status quo. Filing No. 1, Complaint, Ex. A, State Court Record at 35.[2] Defendants ADSTech and CST later agreed to an extension of that order and the matter was removed to this Court. Filing No. 1, notice of removal. On January 15, 2021, this Court extended a TRO originally granted by Douglas County District Court until such time as the Court ruled on Omaha Interlock's motion for preliminary injunction. Filing No. 8, motion to extend; Filing No. 14, Memorandum and Order.

The plaintiff moves for a preliminary injunction and defendant ADSTech opposes the motion and moves to dissolve the TRO presently in force. Defendant CST has also filed a brief and evidence opposing the injunction. Filing No. 28, CST Brief; Filing No. 29 Index of Evidence. In its motion to dissolve, ADSTech asserts there has been a change

---

[2] Specifically, the defendants were enjoined from

    1. Contacting or in any way communicating with any customer of Omaha Interlock

        a) for the direct or indirect purpose of offering or soliciting business from those customers, or

        b) to make any representations to those customers about whether devices currently being leased comply with Nebraska law or the standards of the National Highway Traffic Safety Administration;

    2. Doing any business with any customer of Omaha Interlock, except indirectly through their relationship with Omaha Interlock, consistent with prior practices;

    3. Selling or leasing any Determinator 2 devices in the state of Nebraska, except to and through Omaha Interlock; and

    4. Terminating, cancelling, or failing to renew their relationship with Omaha Interlock.

Filing No. 1-1, State Court Record at 35.

in circumstances and that prospective enforcement of the TRO is not equitable, prohibits ADST from engaging in legitimate business as a certified provider of BAIIDs in Nebraska, and does a disservice to the public interest. The parties have submitted evidence in support of their respective positions and the Court has considered that evidence. *See* Filing Nos. 11, 24, 26, 29, 40, 45, 47, 48, and 54, Indices of Evidence.

B. Facts

This action involves devices known as breath alcohol ignition interlock devices ("BAIIDs"). Filing No. 26-2, Ex. B, Declaration of Jeffrey Peck ("Peck Decl.") at 2. These devices enable individuals who have been charged or convicted with alcohol related offenses to retain their driving privileges. *Id.* The devices measure a driver's breath alcohol content and prevent a vehicle from starting if it detects breath alcohol over a certain limit. *Id.* Ignition interlock devices consist of the hardware—handhelds and vehicle modules—and firmware/software to make the devices work properly. *Id.* at 4.

Plaintiff Omaha Interlock is an authorized dealer of such devices. Filing No. 11-1, Declaration of Seth Spratt ("Spratt Decl.") at 2. ADS and ADSTech are or were manufacturers or providers of the devices. *Id.* at 1-2, 5. Defendant CST is the parent corporation of defendant ADSTech and a company known as Intoxalock. Filing Nos. 19 and 20, Corporate Disclosures; Filing No. 29-1, Declaration of Juvenio Palma ("Palma Decl.") at 1. CST also does business distributing BAIIDs as "Intoxalock" and has provided interlock devices in Nebraska for many years under the Intoxalock® brand name. Filing No. 29-1, Palma Decl.at 1. Beginning years before 2020 and continuing to the present, Intoxalock has had contracts with many installation and service centers in Nebraska. *Id.*

4

at 2. Intoxalock states it would be open to entering into a future contract with the plaintiff to operate as a future service and installation center of Intoxalock. *Id.*

ADS manufactured one of the interlock devices on the market—the Determinator or Determinator 2—when Omaha Interlock first went into the ignition interlock business in 2008. Filing No. 11-1, Spratt Decl. at 1. The devices are required to meet the standards for BAIIDs published by the National Highway Traffic Safety Administration ("NHTSA"). Filing No. 26-2, Peck Decl. at 2. Omaha Interlock purchased hundreds of Determinator devices from defendant ADS from 2014 to 2018 and leased them to customers in Nebraska. *Id.* at 2. ADS allowed Omaha Interlock to use its trademark and trade name in Omaha Interlock's advertising. *Id.* Seth Spratt, Omaha Interlock's owner and president, states that defendant ADS agreed that Omaha Interlock would be the exclusive authorized dealer for ADS devices in Nebraska. Filing No. 11-1, Declaration of Seth Spratt at 1. However, no documentary evidence supports that contention. The record contains an undated, unsigned dealer agreement between ADS and Omaha Interlock, an unsigned revised agreement dated September 21, 2017, and unsigned redlined version of the 2017 agreement. Filing No. 48-1, Agreement; Filing No. 48-2, revised agreement; Filing No. 54-1, Ex. A, Declaration of Tanya Spratt, Attachment A, redlined agreement. The first two agreements specify in § 2.1 that the proposed dealership was a non-Exclusive appointment in territory plaintiff's redlined version alters that provision of the contract to be exclusive. Filing No. 48-1, Agreement at 1-2; Filing No. 48-2, revised agreement at 1-2; Filing No. 54-1, Ex. A, Declaration of Tanya Spratt, Attachment A, redlined agreement at 1.

Customers who lease devices are required by law to calibrate the device and upload certain data to be reported to the state every month. Filing No. 48-1, Agreement. Omaha Interlock performed the calibration and the uploading of data for its customers for a monthly lease payment of $80.00, of which $15.00 was paid to ADS. *Id.* ADSTech estimates, based on records and invoices obtained from ADS, the total cost of Omaha Interlock's purchases of Determinator 2 units between 2014 and 2019 was approximately $241,524.92. Filing No. 26-2, Ex. B, Peck Decl. at 2.

The record shows that defendant ADSTech purchased the assets of ADS, including patents, trademarks, trade names, domain names, social media accounts, and other intellectual property, as well existing contracts with distributors—including Omaha Interlock—in July 2020, pursuant to an asset purchase agreement. Filing No. 26-2, Ex. B, Peck Decl. at 1; *see also* Filing No. 24, Ex. C, APA (sealed). The agreement provided that ADSTech assumed

> any Liability arising out of or relating to the Transferred Contracts that is to be paid or performed after the Closing Date (in each case, in no event to include any obligations of Seller or its Affiliates that relate to any breach thereof that arose on or prior to the Closing Date under any Transferred Contract and other than any Transferred Contract for which consent to assignment is not obtained and as to which the Buyer dies not otherwise enjoy the full post-Closing benefits thereunder.

*Id.* at 15. At the time ADSTech purchased ADS's assets, it was aware that ADS had sold interlock devices to Omaha Interlock between 2014 and 2019 and was aware that there had been no written was no agreement between Omaha Interlock and ADS. Filing No. 26-2, Peck Decl. at 2-3. Omaha Interlock acknowledges that it did not come to an agreement with ADS in 2017. Filing No. 54-1, Tanya Spratt Decl. at 2. Correspondence in the record shows that Seth Spratt pursued an expansion of his territory into Iowa as an

authorized provider, but there is no mention of exclusivity in the email exchange. Filing No. 11-1, Spratt Decl., Ex. C, emails.

After the acquisition, ADSTech reevaluated its business model and began to convert its existing dealer/distributorship relationships to service centers/paid partners. *Id.* at 3. ADSTech describes the changes as follows:

> The current customer base would remain as is with the distributor generating the lease revenue and servicing the customers as they had in the past. However, on a go forward basis, all new customers would be sourced through ADST, paying a referral fee to the service center for any leads sourced by it. The location would then complete the installation and collect referral/install fees, installation fees, calibration fees, and the cost to remove. ADST believes this model is a better model going forward because it would eliminate the need for a distributor to acquire inventory and pay for it, and the distributor would no longer need to take care of reporting requirements to the state or customer service calls as ADST has a state compliance and customer service team to provide these services. Finally, there would be no more expenses paid to ADST, no device fees, no licensing fees, etc.

*Id.* at 2-3. The record shows that ignition interlock devices consist of hardware—handhelds and vehicle modules—and the firmware/software to make the devices work properly. Filing No. 26-1, Declaration of Jennifer Ringgenberg at 2. Omaha Interlock has purchased the hardware for the devices, but ADSTech owns, maintains, updates, and upgrades the firmware/software. *Id.* If ADSTech did not provide the firmware/software for the devices or the calibration stations, Omaha Interlock would have to develop and maintain its own firmware/software. *Id.* The licensing fee covers the use and maintenance of the systems required for the devices to work. *Id.* As part of the transition, ADSTech offered to swap out any noncompliant active driver devices at no cost to Omaha Interlock. Filing No. 11-1, Spratt Decl., Ex. H, email dated Nov. 25, 2020.

ADSTech has shown it offered a written contract to Omaha Interlock in November 2020. *Id.* ADSTech states it is no longer willing to continue a distributorship arrangement

with Omaha Interlock but is trying to promote a continued business relationship with Omaha Interlock involving service work. *Id.* at 4. Omaha Interlock admittedly "rejected the change from exclusive to nonexclusive dealer." Filing No. 54-1, Tanya Spratt Decl. at 2. In December 2020, Omaha Interlock notified ADS that it was "not interested in changing the parties' relationship." Filing No. 11-1, Declaration of Seth Spratt at 6. It states, "the proposed change to the business relationship proposed by Defendants makes no sense for Omaha Interlock" and would drive it, "a franchisee/dealer of interlock devices" out of business. *Id.*

In support of its motion to dissolve the TRO, ADSTech has shown that it obtained a certificate of approval for the Determinator 2 ignition interlock device in the State of Nebraska in February 2021. Filing No. 40-1, Declaration of Jennifer Ringgenberg at 1. Prior to ADSTech's certification, the plaintiff was the only certified provider of Determinator 2 devices in the state of Nebraska, but not as a result of any business arrangement. *Id.* Further, ADSTech has shown that it requested that the State refrain from listing ADSTech as an approved provider of the Determinator 2 to ensure ADSTech's full compliance with the terms of the TRO.

II.   LAW

A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed

on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*); *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.*, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc). Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Damages for violations of binding non-competition and non-solicitation agreements may be difficult if not impossible to measure. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994) (referring to Plaintiff's loss of good will, confidential information, and other legitimate business advantages). However, where a plaintiff alleges lost customers and associated profits, injunctive relief is not necessarily merited. See *MPAY Inc. v. Erie Custom* Comput. *Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) ("[I]t appears that any harm [plaintiff] may suffer in the form of lost customers and lost profits is quantifiable and compensable with money damages.").

Success on the merits has been referred to as the most important of the four factors, but it is insufficient on its own. *Roudachevski*, 648 F.3d at 706. Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm. *Id.* A showing of a threat of irreparable harm is a necessity in proving the propriety of preliminary injunctive relief. *Id.* To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (quoting *Iowa Utils.*

9

*Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996).

 III.  DISCUSSION

The Court finds the plaintiff's motion for preliminary injunction should be denied. The plaintiff has not sustained its burden to show that preliminary injunctive relief is warranted. The plaintiff has an adequate remedy at law. Any damages attributable to the defendants' allegedly wrongful conduct are identifiable and quantifiable. This action involves the common occurrence of a change to a business relationship, an injury to profits that can be remedied by money damages. There are no allegations of ephemeral or inchoate injuries such as damages to reputation that would be hard to quantify. The plaintiff has not shown it is entitled to injunctive relief. Whatever harms the plaintiff has suffered a result of any wrongful acts by the defendants can be compensated by an award of money damages.

Further, the plaintiff has not shown a likelihood of success on the merits as to most or all of his claims. The plaintiff's argument is based primarily on the existence of either an exclusive dealership or franchise relationship and the defendants' wrongful efforts to circumvent it. The record does not support the plaintiff's contention that ADS transferred and assigned an exclusive contract with Omaha Interlock as part of the asset purchase agreement. Characterizations of any franchisor/franchisee relationship are completely unsupported. The record does not show any meeting of the minds between Omaha Interlock and either ADS, ADSTech, or CST/Intoxalock to form an exclusive dealer arrangement. No such agreement is reflected in any document. There is no evidence of contractual terms or any course of conduct that would provide the plaintiff the right to act as the exclusive provider of ADS's devices in Nebraska. To the extent that the plaintiff

relies on any alleged oral agreement, it has not presented evidence of the terms or duration of any such agreement.

Although the plaintiff may have had a business relationship with ADS, which has continued since the purchase of ADS assets by ADST, there is no evidence that relationship was ever exclusive. The unsigned draft agreements exchanged by ADS and Omaha Interlock show that the parties never came to an agreement.

The remaining *Dataphase* factors—the balance of harms and the public interest—are either neutral or weigh in favor of the defendants. The defendant has shown that the present restraints on its ability to do business in Nebraska are unfair. The plaintiff has not shown the proposed changes to ADSTech's business model will necessarily work to its detriment in view of the offer to allow Omaha Interlock to service Intoxalock devices, ADSTech's offer to absorb the cost of replacement of noncompliant devices, and ADSTech's representation that it seeks to continue a relationship with Omaha Interlock. The public has an interest in allowing businesses to operate until a company's business practices are shown to be tortious or wrongful.

This is an ordinary business disagreement. The Court finds that the plaintiff has not sustained its burden to show that it is entitled to the extraordinary relief of an injunction. Accordingly,

IT IS ORDERED that

1. Plaintiff Omaha Interlock Inc.'s motion for preliminary injunction (Filing No. 21) is denied.

2. Defendant Alcohol Detection Systems Technology, LLC's ("ADSTech") motion dissolve or modify the temporary restraining order (Filing No. 38) is granted.

3. The temporary restraining order presently in force (Filing No. 15) is vacated and dissolved.

Dated this 21st day of September 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge